**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Jenice Marte** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Civil Action No.** |
| | ) |
| **School District of the City of York** | ) |
| **Natasha Mathis, Individual** | ) |
| | ) |
| **Defendants.** | ) |

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Jenice Marte (hereinafter, "Plaintiff") moves the Court for entry of judgment in his favor against the named Defendants and in support of such Complaint avers as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Civil Rights Act of 1866, 42 U.S.C. §1981 as through 42 U.S.C. §1983 whereas applicable, as amended by the Civil Rights Act of 1991 ("Section 1981 and Section 1983") and the Rehabilitation Act of 1973 Section 504 (hereinafter, "Rehab Act"). Further, the Americans with Disabilities Act ("ADA") and Title VII.

2. Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that he pleads them pursuant to 28 U.S.C. §1367.

3. Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents and/or actions alleged herein took place within this judicial district.

4. Plaintiff brings this action against her employer, the School District of the City of York (hereinafter, "SDCY") 31 N Pershing Ave. York, PA 17401.

5. SDCY exercised control and supervision over Plaintiff's employment conditions and benefits since SDCY pays the Plaintiff's payroll check and controls her ability to take time off from work for personal or health reasons.

6. Further, Natasha Mathis, African American, (hereinafter "Defendant Mathis" or "Ms. Mathis") handles all issues relating to the work environment and maintains control over enforcement of schedules, pay and medical leave for employees.

7. Plaintiff brings claims under Section 1981 and Section 1983 and her state claims against individual Defendant Mathis.

8. Ms. Mathis resides in the Commonwealth of Pennsylvania, York County, and is employed as Principal at the Ferguson School where the Plaintiff works. Ms. Mathis is in the supervisory line of succession relative to the Plaintiff as she participates in the decisions regarding scheduling, medical leave issues, performance evaluations and enforcing discipline of employees including the Plaintiff.

9. SDCY is a recipient of federal financial assistance through, *inter alia*, funded reading programs, special education and nutrition programs sponsored by, *inter alia*, the American Recovery and Reinvestment Act of 2009, other Federal Stimulus funds, and federal resources from which the Pennsylvania Department of Education advises the School District to use the money for additional nonrecurring expenses like purchasing equipment, teaching resources like books, and software.

10. Plaintiff is an adult Hispanic female who, at all relevant times hereto, resides in the Commonwealth of Pennsylvania, York County, and is employed by SDCY.

11. The Board prohibits all forms of unlawful harassment of employees and third parties by all district students and staff members, contracted individuals, vendors, volunteers, and third parties in the schools. The Board encourages employees and third parties who have been harassed to promptly report such incidents to the designated administrators.

12. Further, the "…Board directs that complaints of harassment shall be investigated promptly, and corrective action be taken when allegations are substantiated. Confidentiality of all parties shall be maintained, consistent with the district's legal and investigative obligations. No reprisals nor retaliation shall occur as a result of good faith charges of harassment."

13. Such anti-harassment policies includes in pertinent part race based harassment, color, ethnicity, disability and age."

14. Further, in "…order to maintain a work environment that discourages and prohibits unlawful harassment, the Board designates the Superintendent or a designee as the district's Compliance Officer."

15. "The Compliance Officer shall publish and disseminate the non-harassment policy and the complaint procedure at least annually to students, parents/guardians, employees, independent contractors, vendors, and the public. The publication shall include the position, office address and telephone number of the Compliance Officer."

16. "The administration shall be responsible to provide training for students and employees regarding all aspects of unlawful harassment."

17. "Each staff member shall be responsible to maintain a working environment free from all forms of unlawful harassment."

18. Critically, Defendant Mathis, with knowledge of the aforementioned policies acquiesced and took action to harm the Plaintiff by failing to adhere to the polices of non-harassment instead violating said policies creating a hostile working environment as more fully described above and below on the basis of race, color, national heritage and disability.

19. Once more, SDCY sanctioned and/or tolerated the harassment of the Plaintiff as well as tacitly approving of the inadequate supervision, discipline, discrimination, and derivation of the Plaintiff's rights both under its own policies and under the law.

## UNDERLYING FACTS

20. Plaintiff is a Hispanic female who has worked for SDCY as a Secretary since January 25, 2008 and was promoted to Office Manager.

21. Plaintiff's job duties are adding and drops, substitute services, mass distributions, employee services, inventory and requisitions, purchase orders, student schedules, residency, McKenney Vento, mail distribution and updating cumulative files active and inactive.

22. In or about 2015, the Plaintiff was given assignments by SDCY which amounted to her serving as a quasi-ESL (English Second Language) interpreter without pay.

23. However, the Plaintiff was not hired for this reason and as the need for bilingual services grew with time, the need for her to translate started to affect her job performance because it frequently interrupted her job responsibilities.

24. Therefore, in July 2018, the Plaintiff told Ms. Mathis and SDCY that she would no longer be able to provide bilingual services without pay.

25. Beginning in August 2018, Ms. Mathis began to undermine Plaintiff's job performance by telling her she was rude and very unprofessional in training meetings with other secretaries.

26. On August 24, 2018, Ms. Mathis accused Plaintiff of not imputing schedules correctly which Complainant states she did input correctly.

27. Then in September 2018, Ms. Mathis assigned Plaintiff with new job duties with little to no direction given.

28. In October 2018, the Plaintiff showed signs of anxiety and depression that caused her to drop out of college courses she was taking at the time.

29. On October 4, 2018, Ms. Mathis informed Plaintiff that if she didn't like it at work to please do her a favor and put in for a transfer and she would gladly sign.

30. On October 5, 2018, Plaintiff expressed to Human Resource Representative, Robert Bernhard, that she was concerned about retaliation for not providing her bilingual services for free any longer, that she was experiencing a hostile work environment that was causing health problems due to the anxiety and depression and that she feared her hours would change or she would be removed from her office.

31. On March 19, 2019, Plaintiff's hours were changed, and Ms. Mathis stated, "if you don't like it you can leave, just ask for the transfer."

32. In May 2019, the Plaintiff begin to feel physically ill before and after work due to the persistent hostile work environment.

33. In July 2, 2019, as she feared, the Plaintiff was moved out of her office.

34. On August 28, 2019, needing time off due to her mental health, the Plaintiff asked Ms. Mathis for her vacation but was denied although she had requested it five days prior, had the time, and no other staff were scheduled to be off.

35. Ms. Mathis would frequently say things like:

36. "You are a "silo" which the Plaintiff took to mean she was a "fat person" who was not doing her job. However, Plaintiff's performance had been fine and above average before Ms. Mathis was hired in June 2018.

37. Further, another woman named Lyan Gonzales was given a position to assist with ESL issues and after this, Ms. Mathis would frequently say out loud sarcastically (after the Plaintiff had quit working at ESL for free) "Oh, I know that you don't get paid for this but can you help translate something" – Plaintiff felt this was to put pressure on her in front of her peers and create a hostile environment.

38. In July 2019, in meetings Ms. Mathias would say loudly to others "we want team players here" and then walk over to the Plaintiff saying "no one is holding you here, you know, you can gladly go, there is the door" and then laugh.

39. Ms. Mathis also stated in July 2019 "don't let the door hit cha on the way out" – "you can put in for a transfer and "I'll gladly sign" "know what I did I had to do so let em run".

40. In June 2019, Plaintiff was supposed to receive a performance review but it didn't happen until July 2019. However, when it did Ms. Mathis would give the Plaintiff a hard time for taking some time off due to stress.

41. On July 2, 2019, when Plaintiff finally received her performance review, she was called a "silo" repeatedly, told she was utterly unprofessional, told she would soon be moved out of her office (as noted above), was told she should not take things so personal and that she needed to stop making her health such a big deal and stop crying or whining in reference to using FMLA medical leave.

42. On July 3, 2019 in a meeting, Plaintiff was told in front of everyone that she shouldn't be answering questions (directed at her) and was told, sarcastically, "oh wait, I was told by Leierer that I need to work on listening" and also saying things interspersed about the fact that she (the Plaintiff) would not agree to do translation work any longer.

43. Further, in July and August 2019, Ms. Mathis accused Plaintiff of stealing time and altering the time clock when she would take time off for doctor's appointments and try to take time off for vacation – which she needed because of the hostile work environment.

44. The Plaintiff requested more time off in August 2019 due to the hostile work environment and specifically informed both Ms. Mathis and Mr. Bernhard that she was struggling with severe anxiety and depression because of Ms. Mathis. However, no action was taken to investigate or remedy the ongoing harassment.

45. In late 2019, Plaintiff's hours were changed when no other office manager has the same hour changes.

46. The Plaintiff's office was moved twice – once again in late 2019 when she was complaining about the hostile work environment and they placed her in the front receptionist area despite the fact that she needed privacy for matters related to students and parents. Further, Ms. Mathis knew this but was trying to get her rattled and when she would complain, Ms. Mathis would laugh and say again, "no one is making you stay here."

47. Finally, the Plaintiff begged to have more privacy and they gave her an office near the front with some limited privacy but it was still a bad area overrun with other parents and students and subsequently made her situation more stressful.

48. Plaintiff attempted on multiple occasions during the fall semester of 2019 to set up one-on-one's to discuss the hostile work environment to try to resolve the issues but Ms. Mathis just made it harder for her by taking job duties from the Plaintiff saying she couldn't handle them and gave them to others while making a public display of the Plaintiff's alleged deficiencies.

49. In early August Plaintiff did try to obtain another position in another building but the position fell through, the Plaintiff believes, because Ms. Mathis was undermining her attempts to find other work in another building.

50. In mid-August 2019, the Plaintiff requested to take time off (vacation) due to stress and anxiety and was told she couldn't so she asked for Family Medical Leave due to the anxiety on August 28. Thereafter she was given the FML paperwork on August 29, 2019.

51. However, when she began utilizing FMLA, Ms. Mathis stripped her of more job duties, stripped her of the ability to manage the office environment (in other words started trying to have her removed from her jobs or undermine her job despite the fact that FMLA allows for job restoration rights).

52. Others have been permitted to use vacation without any wait while she had been told no from July-August 2019 before her use of FMLA.

53. Staff, co-workers and friends of Plaintiff were told they could not communicate with her or their certifications and licenses would be taken from them (ostracizing her further from any contact with people she regularly was friends with).

54. Ms. Mathis then began telling people that "Man, I thought I'd gotten rid of her already" 'look like she is trying to be a cry baby" in respect to Plaintiff's use of FMLA.

55. Ms. Mathis would say to others, "I don't do the crying bit, we don't cry here" after Plaintiff used FMLA in August and Sept 2019.

56. After the Plaintiff contacted the HR department and her union rep yet again, Ms. Mathis began targeting her further, especially when she tried to return to work.

57. In September, the staff began questioning Plaintiff about what was going on with Ms. Mathis and why she was targeting Plaintiff. They became very afraid to talk about the situation for fear they will be retaliated against.

58. The Plaintiff felt and continues to have it intimated that Ms. Mathis is planning to get her, to have her fired, and to do away with her because she is a "whiner."

59. Plaintiff subsequently filed a Charge with the Equal Employment Opportunity Commission as docketed at 530-2020-03540. On May 6, 2020, the Plaintiff received a right to sue email attached herein at Plaintiff's Exhibit A.

60. As per her Title VII claims, the Plaintiff avers that her claims of harassment pursuant to Title VII are independent of her claims under Sections 1981 and 1983 as the Title VII claims subscribe both *intentional* and *negligent* actions (as more fully noted above) on the part of the Defendants whereas the Section 1981 claims that the Plaintiff avers are deliberate and intentional (emphasis added).

61. The Defendants are liable for the actions of its agents under a theory of *Respondeat Superior.*

**COUNT 1**
**VIOLATION OF 42 U.S.C. §1981 and 42 U.S.C. §1983**
**HOSTILE WORK ENVIRONMENT**
**Plaintiff v. All Defendants**

62. Plaintiff incorporates herein the previous averments as if fully set forth.

63. Plaintiff suffered intentional discrimination due to her race: Hispanic American when her direct supervisor disciplined her for things that a Caucasian or African American employee would not have been disciplined for.

64. Further, Plaintiff suffered intentional discrimination due to her race: Hispanic American, when, after she reported the racism to her direct supervisors, she was immediately brought into meetings where she was disciplined for alleged and unfounded workplace policy violations.

65. Further, Plaintiff suffered intentional discrimination due to her race: Hispanic American, when, after she reported the racism the Defendants' failed to promptly investigate, correct or remedy the ongoing harassment.

66. The discrimination and/or harassment was severe because it related to humiliating the Plaintiff due to her protected classed, Hispanic and disability as more fully described above.

67. The discrimination and/or harassment was pervasive because it continues unabated while Ms. Mathis attempts to undermine her position in an effort to discipline and terminate her employment.

68. The discrimination detrimentally affected her by causing an exacerbation of her existing health and mental health conditions as more fully described above and below. Further, the discrimination detrimentally affected her by causing harm to her reputation at work.

69. Further, the discrimination detrimentally affected her by causing ethnic intimidation and she now has psychological harms caused by the racism as well as fear for her safety.

70. Any reasonable Hispanic American would be detrimentally affected by the actions and/or inaction undertaken by the Defendants'.

71. The School and District Defendants' are liable for the actions of its agents and employees whom failed to promptly address and to correct the racism.

72. Further, Defendants' are liable as it continues to allow administration to undermine Plaintiff in the workplace.

73. The Defendants' are liable for the actions of its agents and employees whom took immediate action to undermine her employment and have tainted her position thereby as more fully noted above.

74. The fact that the Plaintiff's supervisors were perpetrators of the harassment and discrimination entitles the Plaintiff to strict liability for her claims.

## COUNT 2
## VIOLATION OF 42 U.S.C. §1981 and 42 U.S.C. §1983 - RETALIATION
## Plaintiff v. All Defendants

75. Plaintiff incorporates herein the previous averments as if fully set forth.

76. Plaintiff reported the racism to her direct supervisors as more fully described above. Afterward, the racism only became more severe and pervasive when, after reporting the racism, the Defendants began a concerted effort to undermine her position by failing to promptly correct and remedy the racism, disciplined her for alleged and unfounded infractions and then to attempted to locate other reasons to attempt to terminate her.

77. For this reason, Plaintiff avers that there is a causal connection between the Defendants' treatment, statements, and actions and the fact that she is a Hispanic American, and had reported racism in the workplace.

## COUNT 3
## VIOLATION OF TITLE VII/PHRA
## (RACE/COLOR/ORIGIN BASED HOSTILE WORK ENVIRONMENT)
## Plaintiff v SDCY as under Title VII
## Plaintiff v SDCY and Individual Defendants under the PHRA

78. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

79. By the conduct described above, Defendants' subjected the Plaintiff to racist actions such as more fully noted above and subsequent discipline.

80. The Plaintiff did not participate in or welcome the harassment.

81. Defendant's conduct was motivated by the Plaintiff's status as a Hispanic American.

82. The conduct of the Defendant was severe or pervasive since it permitted the blatant abuse of the Plaintiff as more fully noted above due to her refusal to continue working as a translator for free.

83. Plaintiff believed the work environment was hostile or abusive because of her supervisor's statements and actions.

84. Plaintiff suffered harassment and unjustified discipline.

85. As a result of the Defendants' actions in violation of Title VII and the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of the Defendants' actions or inaction, thereby entitling her to compensatory damages.

86. In its harassment, as alleged above, the Defendants have acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

87. Further, the Defendants intentionally and/or negligently created a hostile work environment against Plaintiff as more fully described above, and more specifically below, due to her race, color and national origin: Hispanic American.

88. To remedy the violations of the rights of the Plaintiff secured by Title VII and the PHRA, Plaintiff requests that the Court award her the relief found within the named statutes and as prayed for below.

**COUNT 4**
**VIOLATION OF TITLE VII/PHRA**
**(RACE/COLOR/ORIGIN BASED RETALIATION)**
**Plaintiff v SDCY as under Title VII**
**Plaintiff v SDCY and Individual Defendants under the PHRA**

89. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

90. Plaintiff reported the harassment of her immediate supervisor to her supervisor and upper level management including reporting that it was supervisor harassment.

91. Plaintiff reported that she was being disciplined and harassed due to her race/color/national origin and specifically, her unwillingness to work for free as a translator.

92. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991 and the PHRA prohibit retaliation against one whom engaged in protected activity including reporting racism and racist policies in the workplace.

93. Plaintiff engaged in protected activity (i.e. unjustified discipline and harassment) as more fully described above when she went to upper level management with her reports of the same.

94. There was a causal connection between the reporting of the harassment and discipline based on her race/color/national origin and material changes in her employment.

95. If not for Plaintiff's engaging in protected activity the Defendants would not have taken action to undermine her position through bad faith discipline and material job changes.

96. As a result of the Defendants' actions in violation of Title VII and the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of the Defendants' actions or inaction, thereby entitling her to compensatory damages.

97. In its discriminatory actions, as alleged above, the Defendants' have acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to an award of punitive damages.

98. Further, the Defendant intentionally retaliated against Plaintiff as more fully described above due to her race, color and national origin: Hispanic American.

99. To remedy the violations of the rights of the Plaintiff secured by Title VII and the PHRA, Plaintiff requests that the Court award her the relief prayed with the named statutes as well as that which is prayed for below.

## COUNT 5
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

100.   Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

101.   At all relevant times hereto, Plaintiff resided in the Commonwealth of Pennsylvania and SDCY conducts business within the Commonwealth of Pennsylvania.

102.   The Pennsylvania Wage Payment and Collection Law 43 P.S. §260.1 et seq. defines "employer" to include "every person, firm, partnership, association, corporation, receiver, or other officer of a court of the Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2(a) (emphasis added).

103.   At all times material to this Complaint, SDCY was an "employer" within the meaning of the Pennsylvania Wage Payment and Collection Law because they employed the Plaintiff in this Commonwealth.

104.   The Pennsylvania Wage Payment and Collection Law defines "wages" to include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation. The term 'wages' also includes fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employee's pay by the employer". 43 P.S. §260.2(a) (emphasis added).

105.   SDCY failed to pay Plaintiff for wages and benefits due and owing under her for her translation responsibilities for the last three (3) years.

106.   SDCY has failed to pay Plaintiff "wages" as the term is defined by Pennsylvania's Wage Payment and Collection Law including fringe benefits and wage supplements due and owing to Plaintiff on account of Plaintiff's employment with SDCY.

107.   Payment by SDCY of earned but unpaid wages and commissions have not been paid and were not made to Plaintiff within the time requirements authorized pursuant to the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.3 and 43 P.S. §260.5.

108.   Because Plaintiff is not in possession, custody or control of documents which would permit her to calculate with specificity the exact amount of unpaid wages and benefits, Plaintiff is unable to ascertain the extent of earned but unpaid wages and/or benefits at this time, but same shall be proven at the trial of this matter and claim is made therefore.

109.   SDCY possessed no good faith reason for failing to pay Plaintiff the wages and/or benefits to which she was entitled.

110.   As a result thereof, Plaintiff is entitled to payment of wages and benefits owed, liquidated damages, and attorney's fees and costs pursuant to the Pennsylvania

Wage Payment and Collection Law, 43 P.S. §260.10 and 43 P.S. §260.9(a)(f) and any other applicable section.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against SDCY and order SDCY to pay the Plaintiff damages to include, without limitation:

1.    Wages and benefits owed as will be more fully proven at trial including payment for translation services;

2.    Compensatory damages including earned but unpaid back or forward wages, benefits and/or wage supplements;

3.    For statutory prejudgment interest;

4.    For reasonable costs and attorney fees;

5.    For liquidated damages in an amount to be proven at trial; and

6.    For any other relief that this Court deems just and equitable.

### COUNT 6
### REHABILITATION ACT
### HOSTILE WORK ENVIRONMENT
### Plaintiff v. SDCY

111.    Plaintiff incorporates herein the previous averments as if fully set forth.

112.    The Plaintiff avers that she is a qualified individual with a disability under the Rehab Act due to her notice of anxiety and depression and the Defendants' knowledge of the same. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

113.   Defendants regarded the Plaintiff as disabled and Plaintiff has a record of such disabilities.

114.   The Plaintiff was subject to unwelcomed harassment after she sought disability accommodations and after her reports of the Defendants' harassment, unjustified discipline and failure to reasonably accommodate her.

115.   Further, Plaintiff was subjected to further humiliation and harassment when school officials failed to correct or remedy the ongoing harassment by the Defendants and its agents.

116.   Further, after she had made a statement in good faith regarding the Defendants' harassment, she was intimidated by school officials.

117.   Further, Plaintiff was subjected to a hostile work environment because she has been repeatedly mistreated when agents of the Defendants' intentionally, negatively, and callously communicated within the school about the Plaintiff's health issues, private life and alleged negative performance.

118.   The harassment is based on Plaintiff's disability because the negative statements include statements about her health conditions and the fact that she became upset about the harsh treatment.

119.   Further, the harassment is sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment, and to create an abusive and hostile working environment.

120.   Defendants' knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining and berating her due to her conditions.

121.   The fact that the Plaintiff's supervisor is a perpetrator of the harassment entitles the Plaintiff to strict liability against the Defendants' for her claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and all applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the plaintiff, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs.

### COUNT 7
### REHABILITATION ACT RETALIATION
### Plaintiff v. SDCY

122.   Plaintiff incorporates herein the previous averments as if fully set forth.

123.   The Rehabilitation Act prohibits retaliation in the workplace against employees who have, *inter alia*, given notice of their disabilities, sought assistance for an accommodation in the workplace, or to have otherwise opposed practices made unlawful under the law.

124.   The Plaintiff's notification of her disabilities and/or requests for an accommodation in the workplace constitute "protected activity" pursuant to state and federal law.

125.    Further, Plaintiff repeatedly opposed the Defendants' practice of harassment and intimidation, and in fact, filed a complaint against Ms. Mathis with Mr. Berhard as more fully noted above.

126.    The Defendants' retaliated against the Plaintiff on account of her protected activity.

127.    The Plaintiff therefore avers that the Defendants' purported basis to discipline her (e.g. that he was not effectively performing her job and move her office for justifiable reasons) is false and erroneous as the real reason for her discipline is due to her disabilities and reports of the same.

128.    As a result of all of the above, the Plaintiff avers that Defendants retaliated against her on account of her protected activity by imposing disciplinary measures due to her complaints of wrongdoing.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the Rehabilitation Act of 1973 Section 504 and any other applicable statutory remedies including but not limited to: withdrawal of federal grants, monetary relief for the plaintiff, including as applicable compensatory damages and all reasonable attorney's fees and costs.

## COUNT 8
## ADA/PHRA DISABILITY
## HOSTILE WORK ENVIRONMENT
### Plaintiff v SDCY as under the ADA
### Plaintiff v SDCY and Individual Defendants under the PHRA

129.   Plaintiff incorporates herein the previous averments as if fully set forth.

130.   The Plaintiff avers that she is a qualified individual with a disability under the law due to her notice of anxiety and depression and the Defendants' knowledge of the same. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

131.   Defendants regarded the Plaintiff as disabled.

132.    Plaintiff has a record of such disabilities.

133.   The Plaintiff was subject to unwelcomed harassment after she sought disability accommodations and after her reports of the Defendants' harassment, unjustified discipline and failure to reasonably accommodate her.

134.   Further, Plaintiff was subjected to further humiliation and harassment when school officials failed to correct or remedy the ongoing harassment by the Defendants and its agents.

135.   Further, after she had made a statement in good faith regarding the Defendants' harassment, she was intimidated by school officials.

136.   Further, Plaintiff was subjected to a hostile work environment because she has been repeatedly mistreated when agents of the Defendants' intentionally,

negatively, and callously communicated within the school about the Plaintiff's health issues, private life and alleged negative performance.

137.   The harassment is based on Plaintiff's disability because the negative statements include statements about her health conditions and the fact that she became upset about the harsh treatment.

138.   Further, the harassment is sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment, and to create an abusive and hostile working environment.

139.   Defendants' knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining and berating her due to her conditions.

140.   The fact that the Plaintiff's supervisor is a perpetrator of the harassment entitles the Plaintiff to strict liability against the Defendants' for her claims.

**WHEREFORE**, Plaintiff seeks all appropriate relief under and pursuant to the ADA/PHRA as under the statutes invoked above and as more fully outlined below in its ad damnum clause.

## COUNT 9
### ADA/PHRA DISABILITY RETALIATION
### Plaintiff v SDCY as under the ADA
### Plaintiff v SDCY and Individual Defendants under the PHRA

141.   Plaintiff incorporates all forgoing paragraphs as though fully set forth.

142.   The ADA/PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for accommodations in the workplace, or who have otherwise opposed practices made unlawful under the law.

143.   Defendants retaliated against the Plaintiff on account of her protected activity, including Defendants disciplined and terminated Plaintiff's employment without justification after she sought workplace accommodations.

144.   As a result of the above, Plaintiff avers that the Defendants retaliated against her on account of her protected activity as more fully described above causing her injury and entitling her to all appropriate remedies under the statutes.

**WHEREFORE**, Plaintiff seeks all appropriate relief under and pursuant to the ADA/PHRA statutes and as more fully outlined below in its ad damnum clause.

**COUNT 10**
**ADA/PHRA DISCRIMINATION (PRIVACY)**
**Plaintiff v SDCY as under the ADA**
**Plaintiff v SDCY and Individual Defendants under the PHRA**

145.   Plaintiff incorporates all forgoing paragraphs as though fully set forth.

146.   At all relevant times hereto, Plaintiff was qualified to perform the duties associated with her position and did perform her job consistent with Defendant's legitimate expectations.

147.   Plaintiff has impairments which substantially limit one or more major life activities as more fully noted above.

148.   Plaintiff has a record of disability as more fully noted above.

149.  Further, Defendant regarded Plaintiff as having a disability.

150.   Further, Defendant violated the Plaintiff's privacy rights under the ADA and PHRA when through its agents it: published, disclosed, distributed and communicated the Plaintiff's private medical information.

151.  Title I of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., ("ADA") places significant restrictions on an employer's ability to utilize medical information it has received from or about employees or applicants.

152.  Employers are required to treat such medical information as "confidential" and may not disclose it to anyone, for any purpose, other than in very limited categories and circumstances. *Id*.

153.  Further, a violation of the §12112(d) privacy provisions does create a cause of action if the unauthorized disclosure caused an "injury in fact" to the employee. *See, e.g.*, *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001) (stating that an injury in fact occurs "through actual damage (emotional, pecuniary, or otherwise), or through the presence of a continuing illegal practice to which plaintiff is likely to be subject absent court intervention").

154.  Under the Americans with Disabilities Act, employers must keep employee medical information in separate, confidential file, and release that information <u>only</u> to supervisors and managers, who may be told about any necessary restrictions on the duties of the employee and any reasonable

accommodations; and to first aid and safety personnel, who may be informed, when appropriate, if the disability might require emergency treatment or if the employee would need assistance in the event of an emergency evacuation.

155.   Here, Defendant caused an injury-in-fact to the Plaintiff when she was forced out of her office and abused when she used medical leave, was emotionally distraught and distressed over the unlawful and unjustified disclosures of her private medical information and was forced to endure ridicule from her co-workers and supervisor as more fully noted above.

**WHEREFORE**, Plaintiff seeks all appropriate relief under and pursuant to the ADA/PHRA statutes and as more fully outlined below in its ad damnum clause.

### COUNT 11
### PENNSYLVANIA COMMON LAW CLAIM
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – IIED)
### Plaintiff v. Individual Defendant

156.   Plaintiff incorporates herein the previous averments as if fully set forth.

157.   Plaintiff has suffered irreparable severe and emotional distress and harm by the intentional and/or reckless conduct of the Defendants.

158.   The Defendants' expressed extreme and outrageous conduct towards the Plaintiff at a time when she was in great distress and pain regarding her serious health conditions.

159.   The Defendants' showed utter disregard for the Plaintiff's frail condition, intentionally and/or recklessly demeaning the Plaintiff by its actions and conduct.

160.   The Defendants' outrageous conduct, as more fully described above, evidenced extreme disregard for Plaintiff's medical condition and caused the Plaintiff humiliation during severe and disabling physical and mental health conditions in a manner that disrupted his treatment plan and caused severe emotional distress by adding insult to injury and the burden of an unjustified discipline and termination after her reports of discrimination and a hostile work environment.

161.   The Defendants' actions, as more fully set forth above, were extreme and outrageous.

162.   As a direct and proximate result of the Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, including but not limited to complications of, and exacerbations of his mental and physical health conditions as more fully noted above.

163.   As a direct and proximate result of the Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, which resulted in symptoms including but not limited to feelings of fright, shock, humiliation, severe anxiety, outrage, guilt, depression, panic, and diminished self-esteem.

164.   As a direct and proximate result of the emotional distress, as more fully set forth above, Plaintiff sustained bodily harm, including but not limited to,

shortness of breath, gastrointestinal upset, increased heart rate with palpitations, insomnia, severe anxiety, and the exacerbation and deterioration of her physical and mental health conditions and prior treatments.

165. Plaintiff required, sought and received medical treatment, including mental health counseling for the aforesaid emotional distress and resulting injuries.

166. As a direct and proximate result of said injuries, Plaintiff has endured pain and suffering, great mental anguish, and will endure additional pain and suffering in the future, and claim is made therefor.

167. As a direct and proximate result of said injuries, Plaintiff has suffered a loss of life's pleasures and enjoyment and claim is made therefor.

168. As a direct and proximate result of said injuries, Plaintiff has suffered great humiliation and embarrassment, and claim is made therefor.

169. As a direct and proximate result of said injuries, Plaintiff has incurred liability for medical expenses, psychiatric/psychological counseling expenses, and will incur such expenses in the future, and claim is made therefor.

170. The actions of the Defendants' as more fully described above, constitutes extreme and outrageous conduct that evidenced a wanton disregard for the safety and wellbeing of Plaintiff and which were undertaken with the direct intent to harm Plaintiff, and/or callous disregard for Plaintiff's wellbeing, thereby warranting the imposition of punitive damages and claim is made therefor.

**WHEREFORE,** Plaintiff requests this Honorable Court to enter judgment in his favor and against the Defendants for Actual and Compensatory damages; Punitive damages; and Any other relief that this Court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court grant relief on all his Causes of Action as specified below.

171.   To remedy the violation of the rights of the Plaintiff, the Plaintiff requests that the Court award her the relief prayed for below.

172.   Plaintiff prays that the Court issue injunctive relief pursuant to §1981, §1983, the Rehabilitation Act, ADA and Title VII, enjoining the Defendants' its officers, agents, employees, and all others acting for or succeeding, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against the Plaintiff in violation of Section 1981, §1983 and Title VII on the basis of race and under the Rehabilitation Act and the ADA on the basis of disability.

173.   The Plaintiff prays that the Court issue an injunction ordering and requiring that Defendants' formulate, institute, adopt and maintain policies and practices which will provide equal employment opportunities to the Plaintiff and other current Hispanic American employees, or future Hispanic American employees and applicants for employment, and which will to the extent practicable remedy the continuing effects of past discrimination against the Plaintiff and other

31

Hispanic Americans and restore them to the employment status and position they would have held and enjoyed but for the unlawful discrimination complained of herein.

174.   The Plaintiff prays that the Court award monetary relief as follows:

a. On all her causes of action, order Defendants' to pay equitable monetary relief, compensatory and punitive damages to the Plaintiff as are asserted under her claims in an amount to be proven at trial;

175.   The Plaintiff prays that the Court award her costs, expenses and attorneys' fees, payable by Defendants' as follows:

a. By determining that the Plaintiff is a prevailing party on All her Statutory Causes of Action, and thereupon awarding the Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. §1981, §1983 and 42 U.S.C. §1988, Title VII and under the ADA and the Rehabilitation Act.

176.   The Plaintiff prays that the Court order the Defendants' to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

177.   The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that Defendants' have fully complied with the injunctions requested herein and have remedied to the greatest extent practicable

the discriminatory policies and practices complained of herein, and that Defendants' are operating in full compliance with the requirements of §1981, §1983, Title VII and the ADA and Rehabilitation Act with regard to its employment policies and practices.

178.   The Plaintiff prays that the Court Order that the Individual Defendants pay monetary, compensatory and punitive relief as per his claims under the IIED.

179.   The Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

Dated:        7/29/2020                    Respectfully submitted,

                                           DONHAM LAW

                                           By: */s/ Jeremy A. Donham*
                                           Jeremy A. Donham, Esquire
                                           Attorney for Plaintiff
                                           Supreme Ct. I.D. #206980
                                           P.O. Box 487 Dellslow, WV 26531
                                           (717) 881.7855 (ph) (888) 370.5177 (fax)
                                           E-mail: donhamlaw@comcast.net